Filed 10/26/15  On rehearing

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MARIO GARRIDO, | B254490 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC485942) |
| v. | |
| AIR LIQUIDE INDUSTRIAL U.S. LP, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County. Amy D. Hogue, Judge.  Affirmed.

Littler Mendelson, Nancy E. Pritikin, Dominic J. Messiha, Jennifer Tsao for Defendant and Appellant.

Esensten Law, Robert L. Esensten, Jordan Esensten for Plaintiff and Respondent.

_____

Plaintiff and respondent Mario Garrido entered into an agreement with his employer, defendant and appellant American Air Liquide, Inc. (Air Liquide). The agreement provided that all disputes arising out of Garrido's employment with Air Liquide would be resolved by arbitration, and the agreement prohibited class arbitration.

After being terminated, Garrido filed a class action complaint against Air Liquide, alleging various Labor Code violations and unfair business practices. The trial court denied a motion to compel arbitration brought by Air Liquide, finding that the agreement's class waiver provision was improper under the test laid out in *Gentry v. Superior Court* (2007) 42 Cal.4th 443 (*Gentry*). Following the trial court's ruling, our Supreme Court held, in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 364 (*Iskanian*), that *Gentry*'s rule against employment class waivers was preempted by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) (FAA).

In light of *Iskanian*, if this matter were governed by the FAA, arbitration (on an individual basis) would likely be required. This matter is not subject to the FAA, however, and *Gentry*'s holding has not been overturned under California law in situations where the FAA does not apply. We accordingly find that the agreement's class waiver provision is unenforceable. Neither party asserts that class arbitration is appropriate. Therefore, we affirm the trial court's order denying the motion to compel arbitration.

### Factual and Procedural Background

Air Liquide[1] produces and distributes industrial gases throughout the United States. Garrido was hired as a truck driver by Air Liquide in June 2009. He transported Air Liquide gases to locations in California and neighboring states from Air Liquide's Sante Fe Springs production and distribution center.

---

[1] Defendant states that it was named incorrectly in plaintiff's complaint, and that its actual name is Air Liquide Industrial U.S. LP. Because the proper name of defendant is irrelevant to the matters decided in this appeal, we refer generally to defendant as Air Liquide.

Upon his hiring, Garrido entered into an "Alternative Dispute Resolution Agreement" (the ADR agreement). The ADR agreement stipulates that all disputes arising out of Garrido's employment with Air Liquide are to be resolved through alternative dispute resolution, including arbitration "if necessary." According to its terms, the agreement, and any arbitration proceedings, are governed by the FAA.

The ADR agreement allows the parties to conduct discovery and file motions in arbitration. Prior to an employee-initiated arbitration, the employee is required to contribute a sum toward the arbitrator's fee equal to the then-current filing fee in the applicable state or federal court for a complaint or first appearance, whichever is lower. The arbitrator is authorized to provide to the prevailing party all remedies and costs available under applicable law, and is required to issue a written opinion and award stating essential findings and the conclusions upon which the award is based. The ADR agreement prohibits arbitration on a class, collective, and representative basis, as well as private attorney general actions.

Garrido's employment with Air Liquide was terminated in January 2011. In June 2012, Garrido filed a class action complaint against Air Liquide, alleging that it failed to provide mandated timely meal periods (Lab. Code, §§ 226.7, 512) and accurate itemized wage statements (Lab. Code, §§ 226, 226.3), failed to pay compensation due upon separation of employment (Lab. Code, §§ 201-203), and committed unfair business practices (Bus. & Prof. Code, § 17200 et seq.).

Air Liquide promptly moved to compel arbitration of Garrido's claims. Air Liquide argued that the ADR agreement is binding and requires Garrido to arbitrate all claims, and that the agreement's class action waiver should be enforced. Garrido opposed the motion, arguing that the FAA does not apply to transportation workers like Garrido under 9 United States Code section 1, and that the ADR agreement is unenforceable under the California Arbitration Act (Code Civ. Proc., § 1280 et seq.) (CAA).

The trial court denied Air Liquide's motion to compel individual arbitration. It found that the FAA applied due to the express terms of the ADR agreement, which states

that the agreement and any proceedings are governed by the FAA. The court found, however, that, even under the FAA, the ADR agreement could not be enforced pursuant to *Gentry*, because, by denying the ability to bring a class claim, the agreement stood as an obstacle to an employee's right to vindicate statutory labor rights.

Air Liquide timely appealed.

**DISCUSSION**

An order denying a petition to compel arbitration is appealable. (Code Civ. Proc., § 1294, subd. (a).) When a trial court's order is based on a question of law, we review the denial de novo. (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 60.) Decisions on issues of fact are reviewed for substantial evidence. (*Ibid.*)

## I. The FAA does not apply

In moving to compel arbitration, Air Liquide argued, and the trial court agreed, that the ADR agreement is governed by the FAA. The trial court's decision was based entirely on the language of the ADR agreement, which states that the agreement, and any proceedings held pursuant to it, are subject to the FAA. Garrido contends that the ADR agreement is not governed by the FAA because the FAA does not apply to employment contracts entered into by truck drivers.

Section 1 of the FAA exempts from coverage of the FAA "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." (9 U.S.C. § 1; see also *Circuit City Stores, Inc. v. Adams* (2001) 532 U.S. 105, 109.) This "'any other class of workers engaged in foreign or interstate commerce'" has been defined to mean "transportation workers." (*Circuit City*, at p. 121.)

Contrary to the trial court's ruling, a transportation worker's employment agreement does not become subject to the FAA simply because the agreement declares that it is subject to the FAA. By stating that it is subject to and governed by the FAA, the agreement necessarily incorporates section 1 of the FAA, which includes the exemption for transportation workers. Accordingly, courts have found transportation workers'

4

employment agreements exempt from the FAA, even when the agreements purport to be governed by the FAA. (See, e.g., *Palcko v. Airborne Express, Inc.* (3d Cir. 2004) 372 F.3d 588; *Veliz v. Cintas Corp.* (N.D.Cal. 2004) 2004 U.S. Dist. LEXIS 32208 (*Veliz*); *Western Dairy Transport, LLC v. Vasquez* (Tex.App. 2014) 457 S.W.3d 458 (*Western Dairy*).)

This still leaves the question of whether Garrido was a "transportation worker" under section 1 of the FAA. We find that he was. Garrido worked as a truck driver transporting Air Liquide gases, frequently across state lines. "The most obvious case where a plaintiff falls under the FAA exemption is where the plaintiff directly transports goods in interstate, such as [an] interstate truck driver whose primary function is to deliver mailing packages from one state into another." (*Veliz, supra*, 2004 U.S. Dist. LEXIS 32208 at p. *18.) "[T]he FAA is inapplicable to drivers . . . who are engaged in interstate commerce." (*Harden v. Roadway Package Systems, Inc.* (9th Cir. 2001) 249 F.3d 1137, 1140; see also *Western Dairy, supra*, 457 S.W.3d at p. 466 [truck drivers are "indisputably transportation workers"].)

Air Liquide cites to *Hill v. Rent-A-Center, Inc.* (11th Cir. 2005) 398 F.3d 1286, 1290 (*Hill*), which, in determining the FAA section 1 exemption did not apply, found that "Congress was concerned only with giving the arbitration exemption to 'classes' of transportation workers within the transportation industry." Air Liquide argues that, like the defendant in *Hill*, it is not in the transportation industry because its primary business does not involve the transportation of third parties' goods. *Hill* did not delineate the contours of the "transportation industry." Indeed, it appears that the term is not rigid. "[T]he more related to the transportation industry an enterprise is, the less necessary it becomes for the employee to be directly transporting goods." (*Veliz, supra*, 2004 U.S. Dist. LEXIS 32208 at p. *23.)

A significant portion of Air Liquide's business involves the transportation of its gases across state lines. Thus, it must be said that Air Liquide is at least somewhat involved in the transportation industry. And unlike the plaintiff in *Hill*—an "account manager" whose truck delivery duties were incidental to his job (398 F.3d at pp. 1287,

1289)—Garrido' s duty as a truck driver *was* the transportation of goods. Air Liquide cites to no authority holding that a truck driver whose responsibility is to move products across state lines does not fall under section 1 of the FAA. The fact that Garrido transported Air Liquide's own products (rather than those of an Air Liquide client) is of little consequence: "a trucker is a transportation worker regardless of whether he transports his employer's goods or the goods of a third party; if he crosses state lines he is 'actually engaged in the movement of goods in interstate commerce.'" (*International Brotherhood of Teamsters Local Union No. 50 v. Kienstra Precast, LLC* (7th Cir. 2012) 702 F.3d 954, 957.)

Thus, because Garrido was a transportation worker, the FAA does not apply to the ADR agreement.

## II. The CAA does apply

The parties disagree as to whether the CAA applies in the absence of the FAA. On appeal, Garrido asserts that, because the ADR agreement does not specifically reference the CAA, the agreement cannot be subject to the CAA, and since neither the CAA nor the FAA govern, arbitration of this action is improper.

Nothing in the CAA, however, requires that an arbitration agreement explicitly reference the CAA to be enforceable under California law. Code of Civil Procedure section 1281 provides that "[a] written agreement to submit to arbitration . . . is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." California has a "'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.'" (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9.) Any doubts of arbitrability are resolved in favor of arbitration. (*Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, 26.)

*Rodriguez v. American Technologies, Inc.* (2006) 136 Cal.App.4th 1110 (*Rodriguez*), a case relied on by Garrido, does not support his position. The court in that appeal found that an agreement to arbitrate pursuant to the FAA was enforceable and that the plaintiff could not avoid arbitration under Code of Civil Procedure section 1281.2,

6

subdivision (c).  (*Rodriguez*, at pp. 1117, 1121-1122.)  The court did not analyze whether the CAA would apply had the FAA not governed.

In contrast, *Ruiz v. Sysco Food Services* (2004) 122 Cal.App.4th 520 examined the effect of the CAA on an arbitration agreement that did not explicitly reference the CAA. The plaintiff in *Ruiz* argued that California law was not incorporated into an arbitration provision because the provision did not expressly refer to California law.  (*Ruiz*, at p. 533.)  The appellate court deemed the lack of reference immaterial and directed the trial court to grant the defendant's petition to compel arbitration under California law.  (*Id.* at pp. 538-539.)  In reaching a similar conclusion, the appellate court in *Lagatree v. Luce, Forward, Hamilton & Scripps* (1999) 74 Cal.App.4th 1105 noted that the issue of whether it applied the FAA or the CAA to an arbitration agreement "appear[ed] to be academic," stating:  "Assuming arguendo that the FAA does not apply, we would assess the validity of the parties' arbitration agreements under the California Arbitration Act." (*Lagatree*, at pp. 1120-1121.)

Garrido also contends that Air Liquide waived its right to move for arbitration under California law by basing its motion to compel arbitration on the FAA.  We disagree.  In the trial court, Air Liquide moved for an order "compelling arbitration and staying this civil action pending . . . arbitration" based on the "valid and enforceable arbitration agreement that requires Garrido to bring his claims in arbitration, and in his individual capacity."  Although Air Liquide erroneously argued that arbitration should proceed under the FAA, it did not contend that arbitration was not compelled or was improper under the CAA.  Moreover, after Garrido argued in his opposition that the FAA was inapplicable, Air Liquide replied that the ADR agreement was enforceable under California law.  Under these circumstances, there is not cause to find that Air Liquide waived the right to move for arbitration under the CAA.

## III.  Continuing applicability of *Gentry*

As noted, the trial court ruled that denial of Air Liquide's motion to compel arbitration was mandated by *Gentry*.  Following the trial court's order, our Supreme Court issued its decision in *Iskanian*, finding that *Gentry*'s holding was abrogated by a

United States Supreme Court decision, *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333 [131 S.Ct. 1740] (*Concepcion*). (*Iskanian*, *supra*, 59 Cal.4th 348, 364.) Based on *Concepcion*, *Iskanian* held that a state's refusal to enforce a class waiver on grounds of public policy or unconscionability was preempted by the FAA. (*Iskanian*, at pp. 359-360, 364.)

In our original, unpublished opinion, filed on June 3, 2015, we found the argument that *Gentry* could still apply in the absence of the FAA—although briefly raised by Garrido—forfeited due to a failure to support the argument with reasoned analysis. In his petition for rehearing (Cal. Rules of Court, rule 8.268), Garrido again raised the argument, with analysis of the issue. We granted the petition for rehearing and requested that the parties provide further briefing on the potential application of *Gentry*. Because the parties have now had the opportunity to thoroughly brief the issue, and because of the issue's controlling aspect here, we find good cause to consider the issue in this opinion and exercise our discretion to do so. (See *Alameda County Management Employees v. Superior Court* (2011) 195 Cal.App.4th 325, 338, fn. 10.)

As in this case, the plaintiff in *Gentry* brought a class action claim for violations of the Labor Code, even though he had entered into an arbitration agreement with a class waiver. The *Gentry* court, finding that the statutory right to receive overtime pay is unwaivable, concluded that under certain circumstances a class arbitration waiver "would impermissibly interfere with employees' ability to vindicate unwaivable rights and to enforce the overtime laws," and that such a waiver was contrary to public policy. (42 Cal.4th at pp. 453, 457.) The *Gentry* court laid out a four-factor test for determining whether a class waiver should be upheld: "[W]hen it is alleged that an employer has systematically denied proper overtime pay to a class of employees and a class action is requested notwithstanding an arbitration agreement that contains a class arbitration waiver, the trial court must consider the factors discussed above: the modest size of the potential individual recovery, the potential for retaliation against members of the class, the fact that absent members of the class may be ill informed about their rights, and other real world obstacles to the vindication of class members' rights to overtime pay through

8

individual arbitration." (*Id.* at p. 463.)  If a consideration of these factors revealed that class arbitration would more effectively allow employees to vindicate their statutory rights, the class arbitration waiver would be invalidated by the trial court.  (*Ibid.*)

*Concepcion* did not address *Gentry*.  Instead, in *Concepcion*, the United States Supreme Court examined the validity of the "*Discover Bank* rule," a rule enunciated in the case *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 153, in which the California Supreme Court held:  "at least under some circumstances, the law in California is that class action waivers in consumer contracts of adhesion are unenforceable, whether the consumer is being asked to waive the right to class action litigation or the right to classwide arbitration."  *Concepcion* addressed whether the FAA prohibited a state rule that conditioned "the enforceability of certain arbitration agreements on the availability of class-wide arbitration procedures."  (*Concepcion*, *supra*, 563 U.S. at p. ___ [131 S.Ct. at p. 1744].)  The high court held that such a rule was invalid, because "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA."  (*Id.* at p. ___ [131 S.Ct. at p. 1748].)

*Iskanian* applied the holding of *Concepcion* to the *Gentry* rule against class waivers.  In finding *Gentry* abrogated by *Concepcion*, our Supreme Court reasoned: "The high court in *Concepcion* made clear that even if a state law rule against consumer class waivers were limited to 'class proceedings [that] are necessary to prosecute small-dollar claims that might otherwise slip through the legal system,' it would still be preempted because states cannot require a procedure that interferes with fundamental attributes of arbitration 'even if it is desirable for unrelated reasons.'  (*Concepcion*, *supra*, 563 U.S. at p. ___ [131 S.Ct. at p. 1753]; see *American Express Co. v. Italian Colors Restaurant* (2013) 570 U.S. ___, ___ & fn. 5 [186 L.Ed.2d 417 & fn. 5, 133 S.Ct. 2304, 2312] (*Italian Colors*).)"  (*Iskanian*, *supra*, 59 Cal. 4th 348, 364.)  *Gentry*'s rule—under which employment class waivers were deemed invalid if individual arbitration or litigation could not approximate the advantages of a class proceeding—could not be squared with *Concepcion*'s holding that class proceedings interfere with fundamental

9

rights of arbitration. (*Iskanian*, *supra*, 59 Cal. 4th 348, 364, citing *Concepcion*, *supra*, 563 U.S. at p. ___ [131 S.Ct. at p. 1753.].)

Iskanian's focus, however, was whether the FAA preempted the *Gentry* rule. (*Iskanian*, *supra*, 59 Cal.4th 348, 359-360.) The question presented was "whether a state's refusal to enforce such a [class] waiver on grounds of public policy or unconscionability is preempted by the FAA." (*Ibid.*) The court answered the question by holding: "Under the logic of *Concepcion*, the FAA preempts *Gentry*'s rule against employment class waivers." (*Id.* at p. 364.) *Iskanian* did not discuss whether *Gentry* could apply in a case not governed by the FAA.

Gentry's holding—that a class waiver would not be enforced when it interfered with employees' ability to vindicate their right to overtime pay—was based on public policy grounds. (42 Cal.4th 443, 464.) Our Supreme Court previously held that, under the CAA, arbitration provisions which violate public policy are potentially unenforceable. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 99 (*Armendariz*).) In explaining this holding, the *Gentry* court wrote: "*Armendariz* makes clear that for public policy reasons we will not enforce provisions contained within arbitration agreements that pose significant obstacles to the vindication of employees' statutory rights. The Legislature has amended the [CAA] several times since *Armendariz* . . . but has not overturned or modified the holdings in that case." (*Gentry*, at p. 463, fn. 7.) We are not aware of any post-*Gentry* authority determining that public policy no longer remains a valid defense to enforcement of an arbitration agreement governed by the CAA.

Although the CAA's scope is generally similar to the FAA's, there are differences in application. (*Armendariz*, *supra*, 24 Cal. 4th 83, 97-98.) For example, Labor Code section 229 provides that actions "for the collection of due and unpaid wages claimed by an individual may be maintained without regard to the existence of any private agreement to arbitrate." The FAA preempts Labor Code section 229, requiring enforcement of an arbitration agreement covering such a claim. (*Perry v. Thomas* (1987) 482 U.S. 483, 491.) In contrast, when only the CAA applies, an action under Labor Code section 229

may be maintained in court. (*Lane v. Francis Capital Management LLC* (2014) 224 Cal.App.4th 676, 687-688 (*Lane*); *Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1207.)[2]

We believe that the *Gentry* rule likewise may be asserted in matters governed by the CAA and not the FAA. In *Iskanian*, our Supreme Court had the opportunity to find *Gentry* comprehensively invalidated. It did not do so. While *Iskanian* made clear that the *Gentry* rule is preempted by the FAA, it did not go beyond that finding. Therefore, the *Gentry* rule remains valid under the CAA.

## IV. **Application of *Gentry***

In finding the ADR agreement's class waiver provision unenforceable, the trial court applied *Gentry*'s four-factor test. As noted above, these four factors are: "[1] the modest size of the potential individual recovery, [2] the potential for retaliation against members of the class, [3] the fact that absent members of the class may be ill informed about their rights, and [4] other real world obstacles to the vindication of class members' rights to overtime pay through individual arbitration." (*Gentry, supra,* 42 Cal.4th at pp. 453, 463.) Under *Gentry*, if the trial court "concludes, based on these factors, that a class arbitration is likely to be a significantly more effective practical means of vindicating the rights of the affected employees than individual litigation or arbitration, and finds that the disallowance of the class action will likely lead to a less comprehensive enforcement of overtime laws for the employees alleged to be affected by the employer's violations, it must invalidate the class arbitration waiver to ensure that these employees can 'vindicate [their] unwaivable rights in an arbitration forum.'" (*Ibid.*) To the extent that the trial court's decision depended on resolution of disputed issues of fact or inferences to be drawn from the evidence, we review these determinations for substantial evidence. (*Franco v. Athens Disposal Co., Inc.* (2009) 171 Cal.App.4th 1277, 1287-1288 (*Franco*); *Brown v. Ralphs Grocery Co.* (2011) 197 Cal.App.4th 489, 497.)

---

**2**     Because Garrido's claims are not for "due and unpaid wages," Labor Code section 229 does not apply here. (*Lane, supra,* 224 Cal.App.4th 676, 684.)

We find that the trial court's determinations were supported by substantial evidence.[3] Garrido's attorney submitted evidence estimating Garrido's likely recovery against Air Liquide at approximately $11,000. A potential award of as large as $37,000 has been found to satisfy the first *Gentry* factor requiring a modest size of potential recovery. (*Bell v. Farmers Ins. Exchange* (2004) 115 Cal.App.4th 715, 745-746; *Gentry*, *supra*, 42 Cal.4th 443, 458.) Indeed, in *Gentry*, the court observed that wage and hour cases will generally satisfy the "modest" recovery factor because they "usually involve[] workers at the lower end of the pay scale." (42 Cal.4th at pp. 457-458.)

Garrido also submitted evidence sufficient to satisfy the second factor of the *Gentry* test, the risk of retaliation. As the *Gentry* court recognized, "retaining one's employment while bringing formal legal action against one's employer is not 'a viable option for many employees.'" (*Gentry*, *supra*, 42 Cal.4th 443, 459.) In his declaration, Garrido stated that, had he known his statutory rights were being violated during his employment at Air Liquide, he would not have been willing to bring a lawsuit because of fear of retaliation by Air Liquide. According to Garrido, Air Liquide made its truck drivers frequently feel as if their jobs were in jeopardy. Similar evidence has been found to adequately demonstrate the potential for retaliation. (See *Franco*, *supra*, 171 Cal.App.4th 1277, 1296 [relying on plaintiff's declaration stating he felt he would be fired if he complained].)

As for the third factor, *Gentry* noted that "it may often be the case that the illegal employer conduct escapes the attention of employees" and "some individual employees may not sue because they are unaware that their legal rights have been violated." (42 Cal.4th 443, 461.) Garrido declared that he was unaware of his rights under the Labor Code while employed by Air Liquide, and that Air Liquide made no effort to inform him

---

[3]    Air Liquide did not dispute, either in the trial court or on appeal, the potential applicability of *Gentry* to any of the claims made by Garrido, in the event that *Gentry* remains viable. Meal period claims (Lab. Code, §§ 226.7, 512), like those asserted by Garrido, have been found subject to the *Gentry* test. (*Franco*, *supra*, 171 Cal.App.4th 1277, 1290.)

12

or other truck drivers of such rights. Furthermore, according to Garrido, he was unable to take meal breaks because Air Liquide assigned tight delivery schedules, leading him to believe that he was not entitled to breaks. From this evidence, the trial court could reasonably infer that absent class members may be ill informed of their rights.

With regard to the fourth factor—real world obstacles to the vindication of employee rights—the trial court relied on *Gentry*'s reasoning that a "requirement that numerous employees suffering from the same illegal practice each separately prove the employer's wrongdoing is an inefficiency that may substantially drive up the costs of arbitration and diminish the prospect that the overtime laws will be enforced." (*Gentry*, *supra*, 42 Cal.4th 443, 459.) In finding the class waiver unenforceable, the trial court wrote: "Here, Plaintiff has offered evidence that the instant case involves precisely the sort of arbitration agreement with a class action waiver entered as a condition of employment by low-wage, limited-information employees in vulnerable, at-will employment environments that *Gentry* clearly held was unenforceable . . . ."

In light of these determinations, the trial court correctly found that a class proceeding here would be a significantly more effective way of allowing employees to vindicate their statutory rights. (See *Gentry*, *supra*, 42 Cal. 4th 443, 463-464 ["'[T]rial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action . . . .'"].) Air Liquide moved exclusively for individual, not class arbitration, and neither party has indicated an intent or willingness to engage in class arbitration. For these reasons, based on its finding that the class waiver constituted an unlawful exculpatory clause, the trial court properly denied the motion to compel arbitration.

13

## DISPOSITION

The order denying Air Liquide's motion to compel individual arbitration is affirmed.

<u>CERTIFIED FOR PUBLICATION</u>.


                                    BOREN, P. J.

We concur:


ASHMANN-GERST, J.


HOFFSTADT, J.