Filed 1/13/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| SINEDOU S. TUUFULI,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>WEST COAST DENTAL ADMINISTRATIVE SERVICES, LLC,<br><br>    Defendant and Respondent. | B338584<br><br><br>(Los Angeles County<br>Super. Ct. No. 23STCV08678) |

APPEAL from an order of the Superior Court of Los Angeles County.  Kenneth R. Freeman, Judge.  Affirmed.

Justice Law, Douglas Han, Shunt Tatavos-Gharajeh, and William Wilkinson for Plaintiff and Appellant.

Dykema Gossett, Brian H. Newman, Ashley R. Fickel, Charlotte G. Carne, and Christine A. Mardikian for Defendant and Respondent.

_____

## INTRODUCTION

Plaintiff Sinedou S. Tuufuli appeals from the trial court's order granting defendant West Coast Dental Administrative Services, LLC's (West Coast Dental) motion to compel arbitration of Tuufuli's individual claims and to dismiss Tuufuli's class claims. The only issue Tuufuli raises on appeal is whether the court correctly found the parties' arbitration agreement is governed by the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.). As we explain, the court correctly found the FAA governs the parties' arbitration agreement because they agreed to be bound by the act. We therefore affirm the order granting West Coast Dental's motion to compel arbitration of Tuufuli's individual claims and to dismiss her class claims.

## BACKGROUND

West Coast Dental manages a network of dental service facilities throughout California. Those facilities offer "a full range of routine, general and specialty services, including orthodontics, periodontics, endodontics, and oral surgery." West Coast Dental manages the business operations of affiliated dental practices and professional corporations, and it provides those businesses with "support and administrative services" through "support services agreements."

West Coast Dental hired Tuufuli as a collector and customer service representative in August 2017. Around the time she was hired, Tuufuli electronically signed an arbitration agreement.

The arbitration agreement provides that any dispute between Tuufuli and West Coast Dental "relating in any manner to [Tuufuli's] employment or termination of [her] employment . . . shall be resolved by final and binding arbitration."

The agreement defines arbitrable claims as "contract claims, tort claims, and claims relating to compensation, benefits, and stock options, as well as claims based on any federal, state, or local law, statute, or regulation, including," among other laws, "the California Fair Employment and Housing Act, the California Labor Code, the California Unfair Competition Law, and the California Wage Orders." The arbitration agreement states that the "arbitrator shall not have the authority to certify or adjudicate class, collective, or other representative claims, to award any class, collective, or other representative relief, or, without all parties' consent, to consolidate the claims of two or more individuals or otherwise preside over any form of a class, collective, or other representative proceeding." The agreement also provides that it "shall be governed by the Federal Arbitration Act and, to the extent permitted by such Act, the laws of the State of California."

In April 2023, Tuufuli filed a complaint against West Coast Dental, asserting eight individual and class claims for violations of various provisions of the Labor and Business and Professions Codes.

West Coast Dental moved to compel arbitration of Tuufuli's individual claims and to dismiss her class claims. Among other things, West Coast Dental argued the parties' arbitration agreement was governed by the FAA. West Coast Dental's human resources manager submitted a declaration in support of the company's motion. Relevant here, the human resources officer testified that: (1) West Coast Dental is a Delaware corporation; (2) the company held offices in the state of Washington until January 2022; and (3) West Coast Dental

3

sources materials from outside of California to provide services to its affiliated dental practices and professional corporations.

Tuufuli opposed arbitration. She argued that the FAA did not govern the arbitration agreement because West Coast Dental failed to present any evidence that the agreement involves interstate commerce or that the parties otherwise "contemplated interstate commerce." According to Tuufuli, West Coast Dental operates "exclusively within the State of California." Tuufuli also submitted a declaration in support of her opposition in which she testified, in part, that she worked exclusively in California and "rarely, if ever, interacted with individuals or entities outside of California to perform her work duties" for West Coast Dental.

In support of its reply, West Coast Dental submitted a copy of the employee handbook the company gave Tuufuli when she was hired. The handbook explained that West Coast Dental had offices and employees in California and Washington at the time Tuufuli was hired, and it outlined the difference in benefits for its California and Washington employees.

In March 2024, the trial court granted West Coast Dental's motion to compel arbitration and dismissed Tuufuli's class claims. As a threshold matter, the court found that the parties entered into a valid arbitration agreement. The court then found that the FAA applies to the agreement. In making that finding, the court relied on the evidence West Coast Dental submitted in support of its motion to compel arbitration as well as the provision in the arbitration agreement stating that the agreement is governed by the FAA. Finally, the court found that Tuufuli's class claims must be dismissed because the arbitration

4

agreement expressly prohibits Tuufuli from litigating or arbitrating any class claims against West Coast Dental.

Tuufuli appeals.

## DISCUSSION

The FAA reflects a " 'liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.' " (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 235.) "To ensure that arbitration agreements are enforced according to their terms, 'the FAA pre-empts state laws which "require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." ' " (*Ibid.*)

Section 2 of the FAA provides in relevant part: "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.)

The term "involving commerce" as used in section 2 of the FAA is broad and the functional equivalent of " ' "affecting [commerce]." ' " (*Evenskaas v. California Transit, Inc.* (2022) 81 Cal.App.5th 285, 291–292 (*Evenskaas*), citing *Allied-Bruce Terminix Cos. v. Dobson* (1995) 513 U.S. 265, 273–274 (*Allied-Bruce*).) That term is "broader than the often-found words of art 'in commerce.' " (*Allied-Bruce*, at p. 273.) It therefore covers "more than ' "only persons or activities *within the flow* of interstate commerce." ' " (*Ibid.*) "The use of the terminology ' "involving commerce" ' evidences the broadest possible exercise of the commerce clause power by the Congress." (*Scott v. Yoho*

5

(2016) 248 Cal.App.4th 392, 401.)  Employment contracts, except those exempted by the statute, are covered by the FAA. (*Evenskaas*, at p. 292.)

The party asserting the FAA applies to an arbitration agreement bears the burden to " 'demonstrate FAA coverage by declarations and other evidence.' " (*Evenskaas*, *supra*, 81 Cal.App.5th at pp. 291–292.)  The parties to an arbitration agreement need not have contemplated substantial interstate activity at the time they entered into the agreement.  (*Shepard v. Edward Mackay Enterprises, Inc.* (2007) 148 Cal.App.4th 1092, 1097.)  Instead, the parties' "transaction must merely turn out, in fact, to have involved interstate commerce." (*Ibid.*, citing *Allied-Bruce*, *supra*, 513 U.S. at pp. 277–278.)

We review the trial court's resolution of disputed facts for substantial evidence, but where there is no disputed extrinsic evidence considered by the trial court, we review its arbitrability decision de novo.  (*Lane v. Francis Capital Management LLC* (2014) 224 Cal.App.4th 676, 683.)

We agree with the trial court that the FAA governs the arbitration agreement between Tuufuli and West Coast Dental because the parties agreed that it would.  Contrary to what Tuufuli argues on appeal, "the presence of interstate commerce is not the only manner under which the FAA may apply. . . . the parties may also voluntarily elect to have the FAA govern enforcement of [an arbitration agreement]." (*Victrola 89, LLC v. Jaman Properties 8 LLC* (2020) 46 Cal.App.5th 337, 355; see *Barrera v. Apple American Group LLC* (2023) 95 Cal.App.5th 63, 76 ["The FAA applies to contracts that involve interstate commerce (9 U.S.C. §§ 1, 2), but since arbitration is a matter of contract, the FAA also applies if it is so stated in the

6

agreement"].) Indeed, "[a]rbitration under the [FAA] is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit." (*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University* (1989) 489 U.S. 468, 479 (*Volt*).)

Here, the arbitration agreement between Tuufuli and West Coast Dental states that it "shall be governed by the Federal Arbitration Act." Based on the terms of arbitration agreement, the parties agreed that the FAA would govern any dispute arising out of Tuufuli's employment with West Coast Dental.

Tuufuli argues that the terms of the parties' arbitration agreement cannot establish the agreement is governed by the FAA. According to Tuufuli, parties "cannot privately contract to preempt governing state law, nor can they summon the FAA's preemptive force by merely stating their intent to do so." Tuufuli relies on the United States Supreme Court's decision in *Allied-Bruce* to support this argument.

In *Allied-Bruce*, the Supreme Court addressed whether 9 U.S.C. section 2 makes the FAA applicable only where the parties contemplated that the act would apply at the time they formed their contract or whether the act applies to any contract evidencing a transaction involving interstate commerce regardless of whether the parties intended for the agreement to do so. (*Allied-Bruce, supra*, 513 U.S. at pp. 268–270.) The Court adopted the latter reading of section 2, holding that the act applies to any contract evidencing a transaction that "in fact 'involv[es]' interstate commerce, even if the parties did not contemplate an interstate commerce connection." (*Id*. at pp. 277–281.)

7

But the Court in *Allied-Bruce* did not hold that the FAA applies *only* to contracts evidencing a transaction that involves interstate commerce.  Nor did the Court otherwise consider whether the FAA may apply where the parties expressly agreed that it would, even if the underlying contract might not involve interstate commerce.  It is well-settled that a decision is not authority for issues that it does not consider.  (*Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 243.)  *Allied-Bruce*, therefore, does not support Tuufuli's argument.

At oral argument, Tuufuli argued that 9 U.S.C. section 2 expressly exempts the FAA from applying to any contracts that do not involve interstate commerce.  To support this argument, Tuufuli compared section 2 of the FAA to section 1 of the act, which, in relevant part, states that nothing in the act "shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."  (9 U.S.C. § 1.)  Section 1 expressly exempts from coverage of the FAA any contracts made by transportation workers engaged in foreign or interstate commerce.  (*Garrido v. Air Liquide Industrial U.S. LP* (2015) 241 Cal.App.4th 833, 839.)  Thus, "a transportation worker's employment agreement does not become subject to the FAA simply because the agreement declares that it is subject to the FAA."  (*Id*. at pp. 839–840.)

According to Tuufuli, section 2 of the FAA operates in a similar manner to section 1, in that it expressly exempts the act from applying to any contracts that do not involve interstate commerce, even if the parties to the contract agree that the FAA should apply.  We disagree.

8

Section 2 of the FAA simply states that any contract that includes an arbitration agreement and evidences a transaction involving interstate commerce is valid and enforceable except upon grounds that exist for revoking any contract. (9 U.S.C. § 2.) Unlike section 1, section 2 does not contain language exempting the FAA from applying to certain types of contracts, such as ones not involving interstate commerce. (See 9 U.S.C. § 2.) Had Congress intended to exempt the FAA from applying to such contracts, it could have said as much in section 2.

As we explained, arbitration under the FAA is a matter of consent. (*Volt*, *supra*, 489 U.S. at p. 479.) Parties generally are free to structure their arbitration agreements as they see fit. (*Ibid*.) Because Tuufuli and West Coast Dental agreed that the FAA would govern their arbitration agreement, we conclude the trial court did not err in finding that agreement is governed by the FAA. In light of this conclusion, we need not determine whether the FAA also applies because the agreement involves interstate commerce.

## DISPOSITION

The order granting West Coast Dental's motion to compel arbitration is affirmed. West Coast Dental shall recover its costs on appeal.

VIRAMONTES, J.

WE CONCUR:

STRATTON, P. J.

UZCATEGUI, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.