[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**February 4, 2005**
**THOMAS  K. KAHN**
**CLERK**

No. 03-15608

D.C. Docket No. 03-01302-CV-B-E

LASHAN D. HILL,

Plaintiff-Appellant,

versus

RENT-A-CENTER, INC.,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Alabama

**(February 4, 2005)**

Before ANDERSON, CARNES and RONEY, Circuit Judges.

RONEY, Circuit Judge:

The Federal Arbitration Act ("FAA") provides that, if a suit is filed in the district court upon any issue that is subject to a written arbitration agreement, the court shall stay the trial of such action until arbitration has been had in accordance with that agreement.  *See* 9 U.S.C. § 3.  The Act, however, exempts from coverage

any arbitration agreement contained in "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1. Plaintiff LaShan D. Hill, who brought this employment race discrimination claim, signed an agreement to arbitrate any employment related claims when he was employed as an account manager for defendant Rent-A-Center, Inc., a business that rents furniture and appliances to customers on a "rent-to-own" basis. Because plaintiff's job duties involved making delivery of goods to customers out of state in his employer's truck, he opposed his employer's motion to compel arbitration on the ground that he was a worker in interstate commerce and thus exempt from the mandatory arbitration provisions of the FAA. In a case of first impression in this Circuit, we hold that since Hill is not a transportation industry worker, he is not exempt from the mandatory arbitration provisions of the FAA. The district court's stay order compelling arbitration of Hill's employment discrimination claims is affirmed.

## Jurisdiction of Appeal

Contrary to the defendant's argument that the district court order is not appealable because it had dismissed Hill's case without prejudice to reinstatement if arbitration was not completed successfully, the order was clearly a "final order" insofar as compelled arbitration is concerned. Under the FAA, a stay pending the

result of arbitration is considered an interlocutory order and may not be appealed. 9 U.S.C. § 16(b)(1). An appeal may be taken, however, from a "final decision with respect to an arbitration." 9 U.S.C. § 16(a)(3). The district court order made a final decision that arbitration was compelled under the Act. It "plainly disposed of the entire case" insofar as compelled arbitration was concerned, "and left no part of it pending before the court." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 86 (2000); *see also Employers Ins. of Wausau v. Bright Metal*, 251 F.3d 1316, 1321 (11th Cir. 2001) ("because the arbitration order dispose[d] of all the issues framed by the litigation and le[ft] nothing for the district court to resolve" it was an appealable final order"); *Salim Oleochemicals v. M/V Shropshire*, 278 F.3d 90, 93 (2d Cir. 2002) (holding that dismissals with and without prejudice are equally appealable as final orders); *Blair v. Scott Specialty Gases*, 283 F.3d 595, 600-02 (3d Cir. 2002) (same); *Interactive Flight Tech., Inc. v. Swissair Swiss Air Transp. Co.*, 249 F.3d 1177, 1179 (9th Cir. 2001) (same).

## Applicability of § 1 Exemption from Compelled Arbitration

The validity of an agreement to arbitrate is generally governed by the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, which was enacted in 1925 to reverse the longstanding judicial hostility toward arbitration. *See Gilmer v. Interstate Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). The FAA embodies a "liberal federal policy

3

favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Generally, the FAA provides for the enforceability of "any maritime transaction or a contract evidencing a transaction involving commerce." 9 U.S.C. § 2; *see also Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1061 (11th Cir. 1998). The FAA exempts, however, from its coverage arbitration agreements contained in "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1.

The question here is whether Hill, an account manager who as part of his job duties transports merchandise across the Georgia/Alabama border, is a member of a "class of workers engaged in . . . interstate commerce" within the meaning of the Act, therefore qualifies for the § 1 exemption from coverage of the FAA.

The principal Supreme Court case addressing the § 1 exemption is *Circuit City v. Adams*, 532 U.S. 105 (2001). *Circuit City* involved a challenge to the application of the FAA to employment contracts in general in which the Ninth Circuit had held that the § 1 exception for the "other class of workers engaged in foreign or interstate commerce" exempted all employment contracts from FAA required arbitration. 532 U.S. at 112. The Supreme Court reversed, primarily relying on a general rule of statutory interpretation, *ejusdem generis*, which

4

provides that general words following specific words in statutes should be interpreted to be similar in nature to the specific words they follow. 532 U.S. at 114-15. Applying that rule, the Supreme Court determined that Congress intended the term "other class of workers" to be limited in scope by the terms "seamen" and "railroad employees." 532 U.S. at 115. The Court concluded that the FAA's "engaged in commerce" exception should be narrowly construed to apply only to "transportation workers" and not to employment contracts in general. 532 U.S. at 119. It held that the mandatory arbitration provisions of the FAA was applicable to all contracts of employment except those involving "transportation workers." 532 U.S. at 119; *see also Weeks v. Harden, Mfg. Co.*, 291 F.3d 1307, 1313 (11th Cir. 2002) (discussing *Circuit City*).

The Court made the "permissible inference" that Congress' intent when it created the exception was to reserve regulation of such employees for separate legislation more specific to the transportation industry. 532 U.S. at 120-21. The Court cited the Seventh Circuit's opinion in *Pryner v. Tractor Supply Co.,* 109 F.3d 354, 358 (7th Cir. 1997) for proposition that:

> As for the residual exclusions of any other class of workers engaged in foreign or interstate commerce, Congress' demonstrated concern with transportation workers and their necessary role in the free flow of goods explains the linkage to the two specific enumerated types

5

of workers identified in the preceding portion of the sentence. It would be rational for Congress to ensure that workers in general would be covered by the provisions of the FAA, while reserving for itself more specific legislation for those engaged in transportation.

*Circuit City*, 532 U.S. at 121. The Court then noted, "Indeed, such legislation was soon to follow with the amendment of the Railway Labor Act in 1936 to include air carriers and their employees." 532 U.S. at 121.

The emphasis, therefore, was on a class of workers in the transportation industry, rather than on workers who incidentally transported goods interstate as part of their job in an industry that would otherwise be unregulated. There is no indication that Congress would be any more concerned about the regulation of the interstate transportation activity incidental to Hill's employment as an account manager, than it would in regulating the interstate "transportation" activities of an interstate traveling pharmaceutical salesman who incidentally delivered products in his travels, or a pizza delivery person who delivered pizza across a state line to a customer in a neighboring town.

Thus, it is apparent Congress was concerned only with giving the arbitration exemption to "classes" of transportation workers within the transportation industry. Hill is clearly not a member of such a class. This decision is consistent with the overarching principle of a liberal federal policy favoring arbitration agreements.

6

*Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24. To broaden the scope of § 1's arbitration exemption to encompass any employment disputes of a worker employed by a company whose business dealings happen to cross state lines, would allow § 1's exception to swallow the general policy requiring the enforcement of arbitration agreements as pronounced in § 2 of the FAA.

Other circuits have held that the § 1 exclusion to mandatory arbitration only applies to those workers in the transportation industry. *See, e.g. Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 982 (2d Cir. 1997) (noting that "our Circuit's § 1 exclusion is limited to workers in the transportation industries," and *citing Erving v. Virginia Squires Basketball Club*, 468 F.2d 1064, 1069 (2d Cir. 1972)); *Pietro Scalzitti Co. v. Int'l Union of Operating Eng'rs, Local No. 150*, 351 F.2d 576, 579-80 (7th Cir. 1965) (same).

Hill contends that such a position is contrary to our decision in *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054 (11th Cir. 1998). In that case we accepted the majority view among the circuits that "9 U.S.C. § 1 [] includes only employees actually engaged in transportation of goods in commerce." 134 F.3d at 1060-61. Hill argues that because he did transport goods across state lines, *Paladino* means that the § 1 exemption should apply to him.

Although we applied in *Paladino* the requirement that the employee must

"actually engage" in the transportation of goods in interstate commerce for the § 1 exemption to apply, we did not hold that the existence of that one factor alone would trigger the § 1 exemption. In other words, *Paladino* held that the interstate transportation factor is a necessary but not sufficient showing for the purposes of the exemption. By the same token we hold that in addition to the interstate transportation of goods requirement set forth in *Paladino*, the employee seeking application of § 1's exemption must also be employed in the transportation industry. Moreover, because *Paladino* was decided prior to the Supreme Court's decision in *Circuit City*, to the extent of any conflict between these two decisions, *Paladino* must yield.

Because Hill was not within a class of workers within the transportation industry, his employment contract is not exempted from the FAA's mandatory arbitration provisions. The district court's judgment that Hill must go to arbitration for his discrimination claims is

AFFIRMED.